WILLIAM CARLETON & others *vs.* FRANCONIA IRON AND STEEL COMPANY.

The owner or occupant of land is liable in damages to those coming to it, using due care, at his invitation or inducement, express or implied, on any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the land or of the access to it, which is known to him and not to them, and which he has negligently suffered to exist and has given them no notice of.

The owner of a wharf procured a vessel to bring a cargo to it to be there discharged, and suffered her to be placed there, at high water, over a rock sunk and concealed in the adjoining dock. Of the position of the rock and its danger to vessels he had long been aware, but gave no notice thereof to the owners of the vessel or any one in their employment. Without negligence on their part, the vessel settled down upon the rock, with the ebb of the tide, and was bilged by it. *Held*, that he was liable in damages, whether or not he owned the soil of the dock, and whether or not his wharf was a public wharf.

TORT for injury of the plaintiffs' schooner by being sunk and bilged in the dock adjoining the defendants' wharf in Wareham. The case was reserved by *Wells*, J., for the determination of the full court on facts found by him without a jury, those which are material to the decision being as follows:

The defendants owned and occupied a wharf fronting on navigable waters in Wareham River, where the tide ebbed and flowed; and in 1864 extended it and built a sea wall along its outer edge below low water mark, excavating the bed of the river, along the whole length of the wharf, to lay the foundation of the wall, and dredging a space, between twenty and thirty feet wide, in front of the wall, for berths for vessels, which were accustomed to come to the wharf with cargoes of iron and coal for the defendants' foundries, which were situated on the wharf and fenced in on the land side. There was no other proof of any ownership in the dock by the defendants.

There was and always had been in the bed of the river, within the space dredged by the defendants, and opposite to a part of the wharf which was apparently suitable for vessels to lie at, "a large rock, sunk in the water and thereby concealed from sight, dangerous to vessels, and so situated that a vessel of the draft to which the water at said wharf was adapted, being placed

at high water at that part of said wharf, would lie over said rock, and by the ebb of the tide would settle down and rest upon the same; " and the defendants had notice of the existence and position of this rock and of its danger to vessels, (the same having been pointed out in 1864 to John Billings, their general agent and superintendent, who had charge of the wharf and works, and of hiring vessels and receiving their cargoes,) but neglected to place any buoy or other mark upon the rock, or to give any notice of it to the plaintiffs, or to any one in the plaintiffs' employment, at or before the time of the injury which was the subject of the action.

The plaintiffs' vessel came to the wharf in 1866, by procurement of the defendants, bringing a cargo of iron for them under a verbal charter entered into between Billings in their behalf and the master of the vessel in behalf of the plaintiffs, and was placed at the wharf, at the time of high water, over the rock, of the existence of which neither the plaintiffs nor any one in their employment had any knowledge, and, without any negligence on their part, settled down upon the rock, with the ebb of the tide, and so was bilged.

*W. G. Russell*, for the plaintiffs.

*T. M. Hayes*, for the defendants.

GRAY, J.    The owner or occupant of land is liable in damages to those coming to it, using due care, at his invitation or inducement, express or implied, on any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the land or of the access to it, which is known to him and not to them, and which he has negligently suffered to exist and has given them no notice of.    The general principle has been so fully discussed in the recent judgments of this court in *Sweeny* v. *Old Colony & Newport Railroad Co.* 10 Allen, 368, and *Elliott* v. *Pray,* Ib. 378, that but two or three additional cases need be cited by way of illustration.

In *Wendell* v. *Baxter,* 12 Gray, 494, the proprietors of a wharf, established for the use of the public, were held to be liable for an injury resulting from a defect in its surface, whether occasioned by the action of the sea or by other causes, which they

by the exercise of ordinary care and diligence could have provided against, to a person rightfully on the wharf with his horse and cart for the purpose of carrying mail bags from a steamboat to the post-office. In *Parnaby* v. *Lancaster Canal Co.* 11 Ad. & El. 223, the courts of queen's bench and exchequer chamber held that the proprietors of a canal, authorized by law to keep it in repair and to take tolls thereon, were liable at common law for an injury occasioned to a boat, navigating the canal, by striking against another boat, which had sunk in the canal, and which they had negligently omitted to raise, or to indicate the position of by appropriate signals. *S. C.* 3 N. & P. 523, and 3 P. & D. 162. So a corporation, authorized to repair certain docks and to receive tolls for the benefit of the public, was held by the exchequer chamber and the house of lords to be responsible for an injury suffered by a vessel, entering one of the docks, by coming in contact with a bank of mud which it had negligently permitted to accumulate at and about the entrance. *Gibbs* v. *Trustees of Liverpool Docks*, 3 H. & N. 164. *S. C. nom. Mersey Docks Trustees* v. *Gibbs*, 11 H. L. Cas. 687, and Law Rep. 1 H. L. 93. In the judgment of the exchequer chamber in the last case, it was said that, even if the defendants, knowing of the danger, were not bound to remove it, they ought at all events to have closed the dock to the public, and had no right, with a knowledge of its dangerous condition, to keep it open and to invite the vessel in question into the peril which they knew it must encounter, by continuing to hold out to the public that any ship, on payment of the tolls to them, might enter and navigate the dock. 3 H. & N. 176. See also *Indermaur* v. *Dames*, Law Rep. 1 C. P. 274; *S. C.* 2 Ib. 311; *Thompson* v. *North Eastern Railway Co.* 2 Best & Smith, 106.

The report in this case finds that the defendants built, owned and occupied a wharf extending below low water mark into public navigable waters, and excavated and used a dock in front of the same as a berth for vessels, bringing cargoes of iron and coal to their works on and adjoining the wharf, to lie at and discharge; that there was and always had been, within the line of this excavation, and in front of a part of the wharf which was

to all appearance suitable for vessels to lie at when discharging their cargoes, a large rock, concealed under the water and dangerous to such vessels, the existence and dangerous nature of which were known to the defendants, but not to the plaintiffs; that the plaintiffs' vessel came to the wharf by procurement of the defendants, bringing a cargo of iron to them under a verbal charter between the parties, and, while lying at this part of the wharf, settled down with the ebb of the tide upon the rock, without any negligence of the plaintiffs or of any one employed by them, and was broken in and bilged.

It does not indeed appear that the defendants owned the soil of the dock in which the rock was imbedded; but they had excavated the dock for the purpose of accommodating vessels bringing cargoes to their wharf; and such vessels were accustomed to occupy it, and could not discharge at that point of the wharf without doing so. It is immaterial in this case whether the danger had been created or increased by the excavation made by the defendants, or had always existed, if they, knowing of its existence, neglected to remove it or to warn those transacting business with them against it. Even if the wharf was not public but private, and the defendants had no title in the dock, and the concealed and dangerous obstacle was not created by them or by any human agency, they were still responsible for an injury occasioned by it to a vessel which they had induced for their own benefit to come to the wharf, and which, without negligence on the part of its owners or their agents or servants, was put in a place apparently adapted to its reception, but known by the defendants to be unsafe. This case cannot be distinguished in principle from that of the owner of land adjoining a highway, who, knowing that there was a large rock or a deep pit between the travelled part of the highway and his own gate, should tell a carrier, bringing goods to his house at night, to drive in, without warning him of the defect, and who would be equally liable for an injury sustained in acting upon his invitation, whether he did or did not own the soil under the highway.

This view being conclusive of the defendants' liability, it is

unnecessary to consider whether the stevedore who placed the vessel in this berth was the agent of the plaintiffs or of the defendants. *Judgment for the plaintiffs.*