LINNEL MULLINS AND DONNA MULLINS *v.*
JOHN EASTON AND CATHERINE EASTON

[No. 3-876A188. Filed June 12, 1978. Rehearing denied July 31, 1978.
Transfer denied November 6, 1978.]

*Saul I. Ruman*, of Hammond, for appellants.

*Daniel F. Kelly, Timothy F. Kelly, Beckman, Kelly and Smith*, of Hammond, for appellees.

HOFFMAN, J. — Linnel Mullins and Donna Mullins appeal from a summary judgment entered on their complaint for damages against John Easton and Catherine Easton. The action arose out of Linnel Mullins' personal injuries which were sustained as a result of his fall on the back stairway of the Easton residence. The issue raised concerns whether Mullins had the status of a licensee or an invitee upon the property in terms of the duty of care owed to him by the possessor and whether there were material issues of fact as to the reasonableness of the care afforded appellant in consideration of that duty.

On February 21, 1971, the appellees John and Catherine Easton employed the Ace Sewer Company to perform services in connection with removing roots from their sewer line. The Ace Sewer Company was owned by Tony Randazzo who upon receiving the Easton telephone call requested that an employee, Gerald Hammond, and a friend, Linnel Mullins, go along with him to help since his back was weak. Accord-

ingly, Mullins drove with Hammond to the Easton home where he helped to carry a two-hundred-pound machine known as a roto rooter up the "two or three" steps of the back stairs onto the porch. Mrs. Easton opened the door for the pair and let them in. They then carried the machine to the basement where the work was to be performed. Mullins remained in the basement as an observer until the work was completed by Randazzo. Thereupon, Hammond and appellant carried the roto rooter machine back upstairs and out onto the porch. As Hammond proceeded down the rear stairs carrying one end of the machine, Mullins followed with the other end. At that moment appellant apparently moved the upper step slightly forward with his weight as he came off the landing such that he lost his balance and fell under the machine. The roto rooter landed on Mullins' leg causing it to break in the thigh region.

As a result of the accident Mullins, together with his wife, brought this action alleging *inter alia* that the appellee landowners were negligent in the maintenance of their property causing Mr. Mullins' injury to include a fractured left femur, medical expenses, lost wages, pain and suffering thereby damaging Mrs. Mullins by denying her the services and consortium of her husband. After the filing of answers to interrogatories and depositions of the parties, the Eastons moved for summary judgment. The same was granted, the trial court noting that since Mullins was not an employee of Ace Sewer Company he was a mere licensee to whom the "defendants owed . . . no duty except to refrain from injuring him wilfully or entrapping him."

On appeal Mullins asserts that the trial court erred in determining as a matter of law that he was a licensee in the Easton home. Rather, in reliance on *Standard Oil Co. of Ind., Inc. v. Scoville* (1961), 132 Ind.App. 521, 175 N.E.2d 711, and *Cleveland, etc., R. Co. v. Means* (1914), 59 Ind.App. 383, 104 N.E. 785, appellant argues that he was a business invitee on the Eastons' premises. It is said that he was conferring an economic benefit upon them at their request, albeit indirect, by helping to lift the roto rooter to the basement to clear the sewer line.

Appellees respond that in order to be an invitee it is necessary that the person be invited on the premises by the owner and thereafter be on those premises for a business reason. The Eastons relying on *Brown*

*v. Kujawa* (1968), 142 Ind.App. 310, 234 N.E.2d 509, argue that Linnel Mullins was accompanying Randazzo and Hammond for his own convenience, curiosity and entertainment and was only upon the Eastons' property at their sufferance. Further, appellees assert that there is no justification for changing Mullins' status from that of a licensee to that of an invitee, just because he performed some incidental services in helping to carry the roto rooter down to the basement and back, citing *Ft. Wayne Nat'l Bk., Adm. v. Doctor* (1971), 149 Ind.App. 365, 272 N.E.2d 876.

Drawn into question is the legal duty of care owed the voluntary helper of a repairman engaged to work on one's private premises. Relevant to this inquiry there has developed a long standing system classifying those who come upon land in terms of their status relationship with the possessor and the legal duty owed them. *Swanson v. Shroat* (1976), 169 Ind.App. 80, 345 N.E.2d 872. These classifications were most recently reaffirmed by our Supreme Court in *Hammond v. Allegretti et al.* (1974), 262 Ind. 82, 311 N.E.2d 821. Quoting from the *Restatement of Torts* (Second), § 343 (1965) with regard to licensees the *Hammond* court stated:

> " 'A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, but only if, he
>
> (a) knows *or by the exercise of reasonable care* would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) *fails to exercise reasonable care to protect them against the danger.*' " (Original Emphasis).

The court further defined the legal duty owed by a landowner to a business invitee by quoting from *The Evansville and Terre Haute Railroad Company v. Griffin* (1884), 100 Ind. 221:

> " 'If, however, the owner or occupant of lands, by any enticement, allurement or inducement, causes others to come upon or over his lands, then he assumes the obligation toward persons so coming *to provide a reasonably safe and suitable way for that purpose.* An

owner may not be invitation, either express or implied, induce another to come upon or pass over his premises, without keeping them in such condition of safety as to admit of his passing over by the means designated or prepared without injury, *provided he uses due care*. To make the owner or occupant liable for an injury received by one passing over his premises, something more than a mere passive acquiescence in the use of his land by others is necessary. So long as his lands are used by others, be it never so frequent, for their own convenience, he is not liable. But if, by some act or designation of his, persons are led to believe that a way or path over premises was intended to be used by travellers, or others having lawful occasion to go that way, then as to such persons the owner or occupant comes under an obligation to keep it free from dangerous obstructions or pitfalls which might cause them hurt. The inducement must be equivalent to an invitation, either express or implied; mere permission is not sufficient. *Carleton v. Franconia Iron and Steel Co.*, 99 Mass. 216.' " (Original Emphasis).

Whether a person entering the premises of another bears the legal status of an invitee or of a mere licensee depends in part upon the purpose of the visit. So long as the object of the visit is the pleasure of only the visitor or of purely a social nature then he is a licensee. *Ft. Wayne Nat'l Bk., Adm. v. Doctor, supra*. As a licensee, the person is not a trespasser, since he has permission to enter, but he comes for his own purposes rather than for that of the owner. Accordingly, the owner is under no legal duty to keep his premises free from pitfalls except to use reasonable care to warn the licensee of any concealed, dangerous conditions which are known to him.

*Hammond v. Allegretti et al., supra*;

*Woodruff, Administratrix, v. Bowen* (1893), 136 Ind. 431, 34 N.E. 1113;

*See*:   *Ft. Wayne Nat'l Bk., Adm v. Doctor, supra*.

The theory is that the owner's control over his land includes the designation of who will enter upon it and implicitly under what conditions.

When the visitor has a purpose that is related to the occupant's pecuniary interest or advantage, an invitation to use the premises is inferred and the visitor's status is changed with a greater duty imposed.

*The Evansville and Terre Haute Railroad Company v. Griffin, supra;*

*Cleveland, etc., R. Co. v. Means, supra;*

*See: Standard Oil Co. of Ind., Inc. v. Scoville, supra.*

Such is often related to the regular ongoing business establishment in which liability is ultimately born by the enterprise itself. A corollary rule considers one an invitee if the possessor encourages another to enter to further his own purpose such that there arises the implicit assertion that reasonable care has been exercised to make the place safe for the one who came for that purpose. Prosser, *Law of Torts* 4th Ed. 1971, § 61, p. 388. See generally those cases which involve persons employed by the possessor and the obligation to provide them with a safe working habitat.

*Samuel E. Pentecost Const. Co. v. O'Donnell* (1942), 112 Ind.App. 47, 39 N.E.2d 812;

*Hoosier Cardinal Corp. v. Brizius* (1964), 136 Ind.App. 363, 199 N.E.2d 481;

*Cf.: Madrazo v. Michaels* (1971), 1 Ill.App.3d 583, 274 N.E.2d 635.

Thus, the first aspect of the business invitee rule relates to the economic benefit conferred upon the possessor while the second aspect focuses on the specific invitation's implication that reasonable care has been taken. 2 *Restatement of Torts* 2d, § 332, p. 179. While the invitation alone will not assure the status of an invitee, it nevertheless becomes critical to the liability of a private homeowner as a means for distinguishing between the duty he owes a trespassing thief, a soliciting salesman or a requested repairman. As stated in the *Restatement of Torts* 2d, § 332 (c) p. 177:

> "In determining whether a particular person is an invitee, the important thing is the desire or willingness to receive that person which a reasonable man would understand as expressed by the words or other conduct of the possessor. It is immaterial that the person is one whom the possessor is not willing to receive as an invitee if the possessor's words or other conduct are understood, and would be understood by a reasonable man, as indicating the possessor's willingness."

Thus, an invitation or the appearance of an invitation is important because it discloses those circumstances where there is an implied assurance that reasonable care has been exercised to make the premises safe for the purpose of the visit, *viz*, that a repairman can expect to be reasonably free from harm caused by the possessor's negligence.

In the case at bar, Mullins was accompanying the legitimate invitees of the Eastons. His functions was primarily that of an aid to Randazzo of the Ace Sewer firm. Without pursuing the subjective reasons for *his* efforts, it is clear that Mrs. Easton held the rear door of her home open to him as he carried one end of a heavy piece of equipment. Her actions are within the ambit of the *Restatement's* phrase "the possessor's words or other conduct are understood, and would be understood by a reasonable man, as indicating the possessor's willingness" to receive the invitee. 2 *Restatement of Torts* 2d, § 332, supra.

Attempts on the part of the appellees to characterize Mullins as a licensee solely because he was not employed by Ace Sewer ignores the focal relationship between Mullins' presence on the property and the Eastons' invitation and acceptance of him thereon. The only reason given why the Eastons' duty to keep the rear stair safe for Mullins would be any less that that duty which would be required for Hammond for Randazzo was that Mullins was not an employee of Ace Sewer. However, no evidence was presented by interrogatory or deposition that the Eastons considered Mullins' status as any different than that of the repairman that they specifically employed by virtue of calling the Ace concern. Moreover, while Mullins may not have been an employee such is not determinative of his status upon the land. Rather, as herein above noted, the issue was whether Mullins was upon the premises by express or implied invitation of the occupiers and there for their benefit or advantage.

*Hawkins v. Johnson et al.* (1886), 105 Ind. 29, 4 N.E. 172;

*Tyler v. Nolen* (1969), 144 Ind.App. 665, 248 N.E.2d 186.

The record discloses that Mullins was implicitly invited into the house by Mrs. Easton while carrying the machine and performing a function clearly related to the repair of the clogged sewer.

Accordingly, since the duty to an invitee arises as a matter of law

from a status relationship, *Neal, Admr. v. Home Builders, Inc.* (1953), 232 Ind. 160, 111 N.E.2d 280, and since the undisputed facts in the record disclose that relationship, summary judgment must be deemed inappropriate in the case at bar. *Hammond v. Allegretti et al., supra.* The further question of whether the Eastons exercised the requisite degree of care to a business invitee under the circumstances herein would then become a question of fact. *Robertson Bros. Dept. Store v. Stanley* (1950), 228 Ind. 372, 90 N.E.2d 809.

The judgment of the trial court must therefore be reversed.

Judgment reversed.

Buchanan, C.J., Participating by Designation, Concurs.

Garrard, P.J. Concurs in Result.

Note—Reported at 376 N.E.2d 1178.